IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| ALBERT S. WOLOGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 9:17-cv-0157-DCN |
| vs. | ) |
| | ) **ORDER** |
| TRANSAMERICA LIFE INSURANCE | ) |
| COMPANY, and AEGON USA | ) |
| INVESTMENT MANAGEMENT, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The following matters are before the court on defendants Transamerica Insurance Company ("Transamerica") and Aegon USA Investment Management's ("Aegon," together with Transamerica, "defendants") motion to transfer venue, ECF No. 28, and plaintiff Albert Wologo's ("Wologo") motion to withdraw as attorney, ECF No. 41. For the reasons set forth below, the court grants defendants' motion to transfer venue to the Northern District of Iowa. The court leaves the disposition of Wologo's motion to withdraw as attorney to the Northern District of Iowa.

## I.  BACKGROUND

Wologo sold insurance and treasury bonds for Transamerica. Compl. ¶ 4. While employed with Transamerica,[1] Wologo purchased stock through a company stock purchase plan operated by Aegon. Id. ¶¶ 9, 10. Wologo was terminated by Transamerica

---

[1] Wologo's allegations do not specify whether he was an "employee or independent contractor." Compl. ¶ 4. As this issue does not affect the instant analysis, the court refers to Wologo as an employee in this motion for ease of reference. The court makes no finding regarding the legal status of his relationship with Transamerica.

1

on December 4, 2013, at which time he was informed that his indebtedness to the company was "$0." Id. ¶¶ 5–8. At the time of his termination, Wologo was a Michigan resident. Pl.'s Resp. 2.

Wologo maintains that he moved to South Carolina in January 2014, and that he currently resides in Beaufort County, South Carolina. Pl.s' Resp. 2, Compl. ¶ 1. In March 2014, Wologo signed a distribution form instructing defendants to liquidate the stocks held through his company stock purchase plan and distribute the proceeds to an RBC Capital Markets Account. Compl. ¶¶ 11, 12. Wologo alleges that defendants liquidated the stocks, but never provided him with the proceeds. Id. ¶¶ 19–21.

Wologo filed the instant action in the Court of Common Pleas for Beaufort County, South Carolina on December 2, 2016, bringing claims for conversion, fraud, and violation of the South Carolina Unfair Trade Practices Act, S.C. Code 39-5-10, et. seq. (the "SCUTPA"). ECF No. 1. Defendants removed the action on January 18, 2017, ECF No. 1, and filed a motion to dismiss or transfer venue on January 24, 2017, ECF No. 7. The court granted defendants' motion to dismiss as to the SCUTPA claim, and denied defendants' motion to transfer venue without prejudice on March 3, 2017. ECF No. 12. Defendants filed a renewed motion to transfer venue on May 2, 2017. ECF No. 28. Wologo filed a response on May 15, 2017. ECF No. 29. Defendants filed a reply on May 17, 2017. ECF No. 30. The court held a hearing on this renewed motion to transfer venue on July 19, 2017. ECF No. 37. The matters have been fully briefed and are now ripe for the court's review.

## II.   STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented . . . ."  28 U.S.C. § 1404(a).  "The burden is on the movant to show that transfer pursuant to Section 1404(a) is proper."  Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 867 (E.D. Va. 2013).  "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge."  Herring v. LaPolla Indus., Inc., 2013 WL 12148849, at *3 (D.S.C. Oct. 7, 2013) (quoting Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991)).  In exercising this discretion, courts weigh a number of factors:

> (1) the plaintiffs initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Id.

## III.   DISCUSSION

Defendants argue that this case should be transferred to the Northern District of Iowa for several reasons.  Defs.' Mot. 1.  Defendants first contend that "[t]his case should not have been filed in South Carolina in the first place," because venue in South Carolina

3

is improper under 28 U.S.C. § 1391.  Id.  Defendants also argue that the case should be transferred under 28 U.S.C. § 1404(a).  Id. at 2.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  This section "allows for transfer of cases that are originally filed in a proper venue but which have an additional appropriate venue that would also better serve the 'interest of justice.'"  Blevins v. Pension Plan for Roanoke Plant Hourly Employees of ITT Indus. Night Vision, 2011 WL 2670590, at *6 (D.S.C. July 8, 2011).  The four primary factors to consider in evaluating a motion to transfer under § 1404(a), consolidated from the eleven factors listed in Herring, are: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice."  Id. (quoting Dicken v. United States, 862 F. Supp. 91, 92 (D. Md. 1994)).

Defendants first argue that that Wologo's choice of venue should be given little weight because the events giving rise to his claims did not occur in this district.

> Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff.  This burden, however, is relaxed when the plaintiff does not reside in the forum state . . . or when the "plaintiff sues in a forum which has no discernible connection with the controversy."

Blevins, 2011 WL 2670590, at *6 (quoting Sw. Equip., Inc. v. Stoner & Co., 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010)) (emphasis added).  Although Wologo may have moved to South Carolina before the actions giving rise to this dispute occurred, none of those actions actually took place in South Carolina.  Every action pertinent to the dispute took place in either Iowa or Michigan, and the complaint primarily revolves around a

stock purchase plan administered in Iowa.  Thus, this first prong weighs heavily in defendants' favor because South Carolina has little discernible connection with the controversy.

The second factor, the convenience of and access to witnesses, also weighs in defendants' favor.  "The number of witnesses is a factor to be considered as well as the nature and quality of the testimony, the distances and inconveniences involved."  Mims v. Proctor & Gamble Distrib. Co., 257 F. Supp. 648, 655 (D.S.C. 1966), (citing Southern R.R. Co. v. Madden, 235 F.2d 198 (4th Cir. 1956), Leppard v. Jordans Truck Line, 110 F.Supp. 811 (E.D.S.C. 1953)).  Defendants have identified five witnesses other than Wologo, all of whom reside in Cedar Rapids, Iowa.  Defs.' Mot. Ex. 2.  Meanwhile, Wologo's amended Rule 26(a)(1) disclosures identify three witnesses, all of whom reside in South Carolina—himself, his wife, and Ashton Daley ("Daley"), an expert on the tax consequences of defendants' alleged actions.  Pl.'s Resp. Ex. 8.

Defendant's five witnesses will likely testify to the facts relating to Mr. Wologo's allegations of defendants' liability.  Outside of himself and his wife, Wologo has not identified any witnesses to testify relating to liability.  He as only identified Daley, a potential expert witness who will likely testify regarding tax-related damages that Wologo suffered as a result of defendants' actions.  A number of courts that have analyzed § 1404(a) have indicated a greater concern with the convenience of witnesses that will speak to the issue of liability, rather than other witnesses, such as damage experts.  See Weishaupt v. Boston Coll., 2012 WL 1439030, at *5 (M.D.N.C. Apr. 24, 2012) (recognizing that Massachusetts was "the residence of virtually all liability witnesses" in transferring the case to the District of Massachusetts); Foster v. Flying J.,

5

Inc., 2007 WL 193169, at *2 (W.D. Va. Jan. 19, 2007) (transferring the case to the District of Montana, in part because "witnesses to liability" were located in Montana). Accordingly, because Daley's testimony does not appear relevant to defendants' liability, Daley's location is not as important to this § 1404(a) analysis as the location of the witnesses that defendants have identified. Moreover, Wologo's amended Rule 26(a)(1) disclosures acknowledge that he anticipates discovering "[n]umerous employees yet to be identified at Transamerica Life Insurance Company and AEGON USA Investment Management" who may be used to support his claims and defenses. Thus, even Wologo appears to recognize that the bulk of the witnesses will come from defendants' employees, who are likely to be found in or near Iowa. Based on this, the court finds that Iowa is a better location regarding witness convenience and access.

Third, the court considers the convenience of the venue to the parties. Wologo contends that transferring this action to the District of Iowa would place such a burden on him "as to render justice inaccessible." Pl.'s Resp. 4. According to his sworn declaration, "the Northern District of Iowa is very distant from my (sic) where I reside; being made to seek redress in that forum would be substantially burdensome and would limit my access to justice."[2] Pl.'s Resp. Ex. 1, Wologo Dec. ¶ 3. As corporations, defendants presumably have greater resources with which to pursue litigation than Wologo. However, apart from Wologo's conclusory assertion in his sworn declaration, Wologo fails to explain <u>why</u> he would be unable to litigate this action in the Northern District of Iowa. Thus, the court does not grant significant weight to the inconvenience

---

[2] Wologo's wife has provided a similar declaration. Pl.'s Resp. Ex. 2, Laurie Wologo Dec.

to Wologo of litigating the case in Iowa.  The court finds that the third factor, convenience to the parties, equally supports both parties.

The final prong that courts consider in determining whether to transfer venue under § 1404(a) is the interest of justice.  Evaluating "the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action" is an aspect of this fourth factor.  Herring, 2013 WL 12148849, at *3.  Defendants argue that, because they are Iowa entities and because Wologo's claims relate to their administration of an Iowa stock purchase plan, they have an interest in having such claims decided by courts in Iowa that are familiar with Iowa law, so as to avoid potential inconsistencies if other members of the purchase plan bring similar challenges.  Def.'s Mot. 3.  Wologo conceded at the hearing on this renewed motion to transfer venue that Iowa law controls this case.  See also Pl.'s Resp. 5 ("Mr. Wologo would further respectfully submit that the District Court of South Carolina is more than capable of applying Iowa law, when necessary in the present circumstances, and that fraud and conversion, being common law causes of actions, should not differ materially in the state of Iowa.").  Thus, this factor weighs slightly in favor of transferring the case to Iowa.

After considering the four Blevins factors, the court finds that Iowa has a much more significant connection to this controversy than South Carolina.  The action appears to be governed by Iowa law, all of the actions giving rise to defendants' liability took

place in or near Iowa, and most of the witnesses are located in Iowa. Thus, transferring this action to the Northern District of Iowa is appropriate under § 1404(a).[3]

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion to transfer venue.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 16, 2017**
**Charleston, South Carolina**

---

[3] Because the court determines that transfer of venue is appropriate under §1404(a), it grants the motion to transfer under that section only, and declines to address defendants' arguments under 28 U.S.C. § 1391.

8